(No. 4194█

PAUL O. DAVID, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 14, 1950.*

FRED BRANSON, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Paul O. David, was employed by the State of Illinois, Department of Public Welfare, at the Illinois Security Hospital, Menard, Illinois, and while performing the duties of his employment on October 7, 1948, he was kicked by a patient in his right knee and as a result thereof received a fracture of the bone about one inch below the knee.

No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act and the accident arose out of and in the course of his employment. According to the record, respondent

furnished complete surgical, medical and hospital treatment, except for the expenditure of $3.50 for a cane, crutches and a knee pad.

The earnings of the claimant during the year preceding the injury were $2,640.00. Claimant received his full salary subsequent to the injury and up to the date of his discharge on April 8, 1949. There is no claim made in the record for any hospital, medical or surgical attention. At the time of the accident, claimant had no children under the age of 16 years, and the sole question for adjudication is the nature and extent of his injury.

Dr. Erich Otten testified that he was on the staff at the Anna State Hospital, at Anna, Illinois, and that he saw the claimant on October 7, 1948. That the X-rays which were taken on October 8th showed an incomplete linear fracture through the medial plateau of the right tibia with no displacement. And that he also took a picture of an old injury and the diagnosis on the old fracture was as follows: "old fracture of both bones involving the lower one-third of the tibia and fibula", and that was an old injury. That in his opinion there was some permanent injury that would prevent the claimant from doing heavy physical work. He fixed the disability as some limitation of motion which would improve slowly. He stated that the flexion or extension of the leg was not limited, but was only affected in his walking, and that in his opinion the limitation was confined to his bearing of weight on his leg.

Additional testimony was offered, and Dr. E. E. Holloway testified that he saw the claimant on November 25, 1949 and made an examination of his right knee. There apparently were no X-ray pictures taken by Dr. Holloway, nor did he have the advantage of any X-rays that had been previously taken of this man's right knee. Dr.

Holloway testified that he noticed in examining the knee joint there was a crepitation in the right knee joint which he diagnosed as a fragment or chip of cartilage in the lower portion of the patella. He found a ligamental condition in the left side of the knee just above the patella where the leg is attached to the patella. In measuring seven inches above the knee joint he found the right leg to be two inches less in circumference than the left leg. That the claimant did not have complete extension of the right leg. That the claimant has a permanent partial disability, and that it would prevent him from doing certain types of work, and that any work that would put a strain or weight on that knee would cause disability because the knee wasn't stout enough. The claimant couldn't stand heavy pressure on the right knee like he could on the other one. That in his opinion, while it would be kind of guesswork, that he would judge that he had about a 33 1/3% loss or disability of the right leg. He described it as being kind of like a rheumatism, bad at times and other times not so bad. That the trouble with the claimant's right knee was in the extension, and that in his opinion the condition he found would be permanent.

The record shows that the Commissioner examined the claimant's right leg on both hearings.

The Court concludes, while the evidence is not entirely satisfactory, that there is some specific loss of the claimant's right leg which is shown by the medical testimony in the examination by the Commissioner. The Court concludes from the evidence that the claimant has sustained a permanent partial specific loss to the right leg to the extent of 20%.

The Court finds that Rosalee Cox has rendered steno-

graphic services in the amount of $12.00, which charge is found to be fair and reasonable.

The Court further finds that the claimant expended the sum of $5.00 for crutches, $2.50 for a knee pad, and $1.00 for a cane, for a total of $8.50, for which the claimant should be reimbursed.

The Court further finds from the evidence that the claimant necessarily expended money in going to and from his home in Anna, Illinois, where he was compelled to go for his examination, medical treatment and hospitalization and find from the evidence that he should be awarded $75.00 for these expenses.

The record shows that claimant was paid full time during the period of his temporary total disability in the amount of $752.26. His compensation during said period would have been $292.50 for 15 weeks temporary total disability. He was therefore overpaid in the amount of $459.76, which will have to be deducted from the award.

On the basis of this record, we make the following award:

Twenty per cent partial specific loss of use of the right leg in the sum of $741.00 from which award will be deducted the sum of $459.76, overpayment for non-productive time, leaving a balance due of $281.24, all of which has accrued and is payable forthwith.

An award of $83.50 for expenses necessarily incurred by the claimant in the treatment of his said injuries.

An award is also entered in favor of Rosalee Cox for stenographic services in the amount of $12.00, which is payable forthwith, and the Court finds that said charge is reasonable, and said claim is allowed.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."